1

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Michael E. Williams (Bar No. 181299)
  michaelwilliams@quinnemanuel.com
  A.J. Bedel (Bar No. 243603)
  ajbedel@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

2

3

4

5

6

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alicia Veglia (Bar No. 291070)
  aliciaveglia@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California  94111
Telephone:   (415) 875-6600
Facsimile:    (415) 875-6700

7

8

9

10

Attorneys for Plaintiff DIRECTV, LLC

11

12

UNITED STATES DISTRICT COURT

13

EASTERN DISTRICT OF CALIFORNIA

14

SACRAMENTO DIVISION

15

16

DIRECTV,LLC, a California limited liability corporation,

17

            Plaintiff,

18

      vs.

19

20

DISH ONE SATELLITE, LLC, a Utah limited liability corporation; MICHAEL HAMMOND, an individual; JEREMY HAMMOND, an individual; ALEXANDER AMINI, an individual; BLAKE JANSON, an individual; and DOES 1 through 20, inclusive,

21

22

23

            Defendants.

24

CASE NO.

DIRECTV, LLC'S  COMPLAINT FOR:

(1)      CIVIL RICO CLAIM;

(2)      CIVIL RICO CONSPIRACY;

(3)      FEDERAL TRADEMARK INFRINGEMENT;

(4)      FALSE DESIGNATION OF ORIGIN OR FALSE DESCRIPTION;

25

(5)      FEDERAL TRADEMARK DILUTION;

26

(6)      FEDERAL FALSE ADVERTISING;

27

(7)      CALIFORNIA FALSE ADVERTISING;

28

(8)      FRAUD;

1

2          (9)     CONSPIRACY TO COMMIT FRAUD;

3          (10)    NEGLIGENT MISREPRESENTATION;

4
           (11)    CALIFORNIA UNFAIR
5          COMPETITION;

6          (12)    LIBEL;

7          (13)    SLANDER;

8          (14)    TRADE LIBEL;

9          (15)    TORTIOUS INTERFERENCE WITH CONTRACT;

10
           (16)    INTENTIONAL
11         INTERFERENCE WITH
           PROSPECTIVE ECONOMIC
12         ADVANTAGE; AND

13         (17)    UNJUST ENRICHMENT;

14         DEMAND FOR JURY TRIAL

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Plaintiff DIRECTV, LLC ("DIRECTV"), brings this action against Defendant

2   Dish One Satellite, LLC ("Dish One"), Defendant Michael Hammond, Defendant

3   Jeremy Hammond, Defendant Alexander Amini, Defendant Blake Janson, and Doe

4   Defendants (collectively "Defendants") for injunctive relief and damages arising out

5   of Defendants' illegal pattern of racketeering activity in violation of RICO,

6   trademark infringement, trademark dilution, false advertising pursuant to the

7   Lanham Act and California law, fraud, defamation, unfair competition, and tortious

8   interference and alleges as follows:

9

10                          Nature of the Action

11   1.     In this action, DIRECTV seeks injunctive relief and damages for

12   Defendants' knowing and willful acts of racketeering activity, fraud, false

13   advertising, trademark infringement, trademark dilution, unfair and deceptive trade

14   practices, among other claims, in violation of the laws of the United States and the

15   state of California.

16   2.     DIRECTV is a provider of digital satellite television service to over

17   20 million customers in the United States.  DIRECTV has earned its market place

18   esteem by expending a great deal of time, effort, and money in the advertising,

19   promotion, and marketing of its products and services over the past nineteen years.

20   Due to the quality of its services, and its fair dealings with its customers, the

21   relevant consuming public has come to associate the DIRECTV name with quality

22   and dependability.

23   3.     To gain an unfair commercial advantage at DIRECTV's expense,

24   Defendants have engaged in a pattern of racketeering activity and a systematic

25   campaign whereby its employees approach existing DIRECTV customers, claiming

26   to be employees and/or authorized independent retailers of DIRECTV.  After falsely

27   telling these customers that (1) they are associated with DIRECTV, (2) that

28   DIRECTV and Dish Network (one of DIRECTV's primary competitors in the

1    satellite television market) are now the same company, and/or (3) that there are

2    various issues and/or complaints associated with DIRECTV's television service,

3    Defendants, through their management and employees, attempt to persuade the

4    DIRECTV customers to switch their television service from DIRECTV to Dish

5    Network.  As these customers are often under contract with DIRECTV at the time of

6    Defendants' contact with these customers, Defendants are inducing those customers

7    to breach their contracts with DIRECTV.

8        4.      As a part of Defendants' scheme and in order to continue their ruse that

9    DIRECTV and Dish Network are the same company and/or related companies,

10   Defendants, through their employees or at their instruction, called DIRECTV,

11   falsely claiming to be a DIRECTV customer or a representative of the customer and

12   seeking to cancel the DIRECTV service.

13       5.      To obtain DIRECTV services and hardware associated with certain

14   promotional offers, some new customers sign a two year contract with DIRECTV.

15   Customers that disconnect their service prior to the end of the two year period are

16   charged an early cancellation fee.  In order to avoid the potential early cancellation

17   fee and unbeknownst to the customers, Defendants impersonate the customer and

18   contact DIRECTV, falsely stating to DIRECTV that the DIRECTV customer is an

19   active member of the United States military who has just received deployment

20   instructions and seeks to cancel their DIRECTV account without cancellation fees

21   or penalties.[1]  DIRECTV, also unaware of Defendants' deceit, allowed the customers

22   to close their accounts without charging a cancellation fee or penalty.

23       6.      Defendants' misconduct is and has been willful, performed with the

24   intention of converting DIRECTV customers based on multiple false pretenses and

25   _____

26       [1]   DIRECTV does not charge any cancellation fees for subscribers who are
     members of the United States military and who are given instructions to relocate
27   (often overseas).

28

1  free-riding on DIRECTV's hard-earned goodwill in its name, logo, and products and

2  services.  Defendants' actions have caused irreparable damage to DIRECTV, and,

3  unless Defendants are restrained and enjoined by this Court, DIRECTV will

4  continue to be irreparably harmed in the future.  Thus, DIRECTV is entitled to

5  injunctive relief to restrain Defendants from further wrongdoing, as well as awards

6  of compensatory, treble, and punitive damages against Defendants.

7

8                              Jurisdiction and Venue

9        7.      This action arises under, among other claims, the trademark and anti-

10  dilution laws of the United States, including but not limited to Title 15 of the United

11  States Code.  The jurisdiction of this court is founded upon 28 U.S.C. §§ 1331, 1332

12  and 1338.

13        8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2)

14  because a substantial part of the events and omissions giving rise to the claims

15  herein occurred.  Among other things, Defendants undertook some of the actions

16  that give rise to this action in this District, actively choosing to do business in this

17  District.

18

19                                  The Parties

20        9.      Plaintiff DIRECTV is a California limited liability corporation with its

21  principal place of business in El Segundo, California.  DIRECTV provides digital

22  television service (as well as audio and other programming) to subscribers, by way

23  of a direct broadcast satellite system and specialized satellite receiving equipment.

24        10.     DIRECTV is informed and believes, and on that basis alleges, that

25  Defendant Dish One Satellite is a Utah limited liability corporation with its principal

26  place of business located in Provo, Utah.  Additionally, Dish One has done business

27  and/or is currently doing business under the alternative names D1 Sales, Dishone,

28  Dish One Satellite, Inc., and Hammond Marketing, Inc.

11.     DIRECTV is informed and believes, and on that basis alleges, that Dish One is an authorized retailer of satellite television receiving services and equipment for Dish Network and does business throughout the United States under the above names.

12.     DIRECTV is informed and believes, and on that basis alleges, that Defendant Michael Hammond is an individual who lives in or around Provo, Utah. On information and belief, Defendant Michael Hammond is CEO, founder, and one of the owners of Defendant Dish One.

13.     DIRECTV is informed and believes, and on that basis alleges, that Defendant Jeremy Hammond is an individual who lives in or around Provo, Utah. On information and belief, Defendant Jeremy Hammond is COO and one of the owners of Defendant Dish One.

14.     DIRECTV is informed and believes, and on that basis alleges, that Defendant Alexander Amini is an individual who lives in or around Salt Lake City, Utah. On information and belief, Defendant Amini holds an ownership stake in Defendant Dish One.

15.     DIRECTV is informed and believes, and on that basis alleges, that Defendant Blake Janson is an individual who lives in or around Alpine, Utah.

16.     The identities of the various Doe Defendants are not currently known, and this Complaint will be further amended to include the names of such individuals or entities, when the same is ascertained.

## Factual Background

17.     DIRECTV's National Reputation and Trademark Recognition. DIRECTV is a provider of digital satellite television service. Launched nationally in 1994, DIRECTV now serves more than 20 million customers in the United States (including customers in all 50 states). DIRECTV offers more than 190 HD channels

1  in Dolby-Digital® 5.1 theater-quality sound, access to exclusive programming, and
2  foreign-language programming.

3       18.    Continuously and without interruption since the early 1990's,
4  DIRECTV has expended a great deal of time, effort and money in the promotion of
5  its services and products.  Through extensive advertising and marketing efforts,
6  DIRECTV has become known nationally for its exemplary digital satellite television
7  service.  DIRECTV's fair and honorable dealings with its customers is essential to
8  the relevant consuming public's recognition of DIRECTV's products and services as
9  being of the highest quality.

10       19.    To distinguish its line of services from competitors, DIRECTV has
11 developed several visually distinctive trade and service marks, each of which has
12 become well-known to the consuming public throughout the United States (and
13 other parts of the world) as being associated with DIRECTV and its high quality
14 service.  DIRECTV has caused certain trade and service marks to be registered on
15 the Principal Register of the United States Patent and Trademark Office (the
16 "Marks"), including the "DIRECTV" service mark (including but not limited to
17 Reg. No. 2,698,197, registered March 18, 2003; Reg. No. 3,085,552, registered
18 April 25, 2006) and the DIRECTV cyclone design (including but not limited to
19 Reg. No. 1,989,358, registered July 23, 1996; Reg. No. 2,372,271, registered
20 August 1, 2000).  True and correct copies of representative examples of these
21 Registrations are attached to this Complaint as Exhibits A and B respectively, and
22 are incorporated herein by reference.  DIRECTV is the true and rightful owner of
23 these trademarks.

24       20.    To receive DIRECTV's television service, its customers must use both
25 a DIRECTV-specific satellite dish and a DIRECTV-specific receiver.  Satellite
26 dishes and receivers from other satellite television companies are not compatible
27 with DIRECTV's satellite television service.

28

21.     Typically, DIRECTV customers sign up with DIRECTV for a specific contract term, normally for two years.  If the customer cancels their DIRECTV subscription prior to the end of the contract term, they have agreed to and are required to pay a cancellation fee.

22.     DIRECTV does not charge any cancellation fee for subscribers who are members of the United States military, who receive instructions to be deployed, and who are cancelling or suspending their DIRECTV subscription for that reason.

23.     <u>Defendants' Marketing Strategy</u>.  Defendant Dish One operates as an authorized retailer for Dish Network, DIRECTV's primary competitor for satellite television service in the United States.  Defendants, through the individual Defendants and Defendant Dish One's employees, have and continue to sell Dish Network's products and services.

24.     Defendant Dish One's primary method of sales is through door-to-door sales, whereby Defendant Dish One's sales personnel (including Defendants Amini and Janson, among others) ( the "Dish One Sales Force") goes to potential customer's residences to persuade the customer to purchase satellite television service.

25.     Although headquartered in Utah, Defendant Dish One sends members of the Dish One Sales Force to make sales for it across the United States, including in California, Indiana, and Idaho.

26.     Defendants have engaged in marketing efforts to target existing DIRECTV customers and convince those customers to switch to Dish Network based on false and misleading representations.  To accomplish this goal, Defendants have repeatedly engaged in various types of fraudulent activity, described in detail herein.

27.     <u>Defendants Train The Dish One Sales Force to Falsely Identify Themselves as DIRECTV and to Disparage DIRECTV.</u>  The Dish One Sales Force is trained (by Defendant Michael Hammond and Defendant Amini, among others)

1  through a variety of materials, demonstrating how Defendants wish the Dish One

2  Sales Force to conduct themselves.  This training includes specific language to be

3  included in a pitch and the appropriate times to raise certain topics with the

4  customer.

5      28.    Defendant Dish One's training materials include a series of

6  instructional videos in which Defendant Michael Hammond and Defendant Amini

7  teach the Dish One Sales Force how to convince existing DIRECTV customers to

8  sign up for Dish Network's products and services by falsely claiming to be affiliated

9  with DIRECTV and then falsely disparaging DIRECTV.  These videos were

10  available electronically to all of the Dish One Sales Force as recently as June 2013.

11      29.    The videos explain that "what we are trying to accomplish with this

12  pitch is that we give you guys a lot of stuff to come across not like a salesman when

13  you are doing a satellite-to-satellite switch."  Further, the videos explain that the

14  Dish One Sales Force is "trying to get customers frustrated with DIRECTV."

15      30.    To accomplish these purposes, the videos explicitly reference the fact

16  that the Dish One Sales Force wear shirts that include the DIRECTV name and logo

17  and the fact that the Dish One Sales Force's binders contain the DIRECTV name

18  and logo as well.  The stated purpose of the presence of these logos is "so you don't

19  come across like you are just from Dish Network" and it "comes across like you are

20  repping both."

21      31.    Defendants were not authorized to use DIRECTV's name or logo,

22  which are federally-registered trademarks as described in paragraph 19.

23      32.    The videos then instruct the Dish One Sales Force to repeatedly

24  identify themselves with DIRECTV, utilizing a script that says "are you already

25  with <u>us</u> on Dish or DIRECTV" and "how long have you been with <u>us</u> on

26

27

28

DIRECTV?"[2]  The videos highlight this exact language both orally and graphically, including underlining the word "us" each time.  The stated purpose is to "come across like you are with both companies."

33.     Further, the videos state that the Dish One Sales Force should tell the DIRECTV customer:

        a.     "You have been with <u>us</u> a long time."

        b.     "We do both Dish Network and DIRECTV."

        c.     "I'm the install company.  I do all of the Dish Network and DIRECTV installs in this whole area."

34.     In fact, Defendants are not associated with DIRECTV.

35.     Further, at no point were Defendants an installer of DIRECTV.

36.     Additionally, Defendants are not and have never been the exclusive installation company for DIRECTV in any given area.

37.     The videos acknowledge that the Dish One Sales Force might not be familiar with DIRECTV's pricing structure or DIRECTV's equipment offerings because, of course, they do not actually represent DIRECTV.

38.     The videos encourage the Dish One Sales Force to convince existing DIRECTV customers that are still under contract with DIRECTV to terminate their contract with DIRECTV and switch over to Dish Network, as the sales force is told "don't walk away from those sales."

39.     The videos instruct Dish One Sales Force to falsely tell the DIRECTV customer that "we have had a ton of <u>our</u> DIRECTV customers [gestures to the DIRECTV name and logo on the binder] calling in and complaining."

---

[2]   The videos place an emphasis on the exact language used by the instructors in the video, stating "pay attention to the words I am saying and the phrases I am using."

-10-

40.     Defendants do not accept phone calls for DIRECTV as they are not associated with DIRECTV.

41.     The videos instruct the Dish One Sales Force to tell DIRECTV customers that DIRECTV and Dish Network are the "exact same thing" but that Dish Network is "a ton cheaper."

42.     These statements are false, as DIRECTV and Dish Network are not the "exact same thing."

43.     The videos instruct the Dish One Sales Force to tell existing DIRECTV customers, without any basis, that "it has made sense for all of your neighbors to switch [from DIRECTV to Dish Network]."

44.     The video contains a number of other instructions to further give the customer the false impression that the Dish One Sales Force is associated with DIRECTV.

45.     The instructional videos contain a number of other instructions to further give the customer false information about DIRECTV, its offerings, and the customer satisfaction of DIRECTV's customers.

46.     Finally, the video instructs the Dish One Sales Force, towards the end of the pitch, to walk into the DIRECTV customer's home without an invitation.

47.     The instructional videos train the Dish One Sales Force to ask the DIRECTV customer "can I see it [the DIRECTV receiver] really quick" and then "walk into their house."  The videos further encourage the Dish One Sales Force to "Step into their [the DIRECTV customer's] house," stating "Don't be afraid to walk into someone's house [uninvited].  They will [retroactively] let you in every single time."

48.     DIRECTV would never encourage any individual wearing its logo or associated with DIRECTV to walk into a home uninvited.

49.     <u>Defendants and Their Employees Go Door-To-Door Posing As Working For DIRECTV</u>.  Beginning at a date unknown to DIRECTV, but at least as

early as May 2013, Defendant Dish One sent the Dish One Sales Force out wearing shirts containing an unauthorized reproduction of the DIRECTV trademarked name and logo (alongside the logo of Dish Network).

50.     When the Dish One Sales Force are going door-to-door, those individuals carry binders and/or other paraphernalia containing DIRECTV's name and logo.

51.     As a part of their door-to-door sales pitch, the Dish One Sales Force tells the existing DIRECTV customer either (a) that they work exclusively for DIRECTV or (b) that DIRECTV and Dish Network have merged (or are about to merge or were merged and were forced by the government to split but continue to work in concert) to become one company and that they work for both companies.

52.     Then, the Dish One Sales Force reemphasizes their oral representation that they work for DIRECTV by the appearance of DIRECTV's name and logo on their clothing, binder, and/or other paraphernalia, at times specifically gesturing to the name and logo when referencing DIRECTV.

53.     Upon convincing the existing DIRECTV customer of their relationship with DIRECTV, the Dish One Sales Force attempts to convince the customer to sign up for an "upgrade" of the customer's service and to get a brand-new receiver box. At times, the customer is only aware or believes that their existing DIRECTV is getting "upgraded."  They are unaware that the service is not DIRECTV until after they have signed up and after installation has begun.  Other times, the customer is aware that this "upgrade" is to Dish Network (believing that Dish Network and DIRECTV are the same company, recently merged, or were merged and forced by the government to split back up again but continuing to work in concert).

54.     Defendants have targeted, among others, a number of elderly citizens who reside in this District.  DIRECTV is aware of at least one retirement community that Defendants targeted for their actions, which includes three of the victims described below.

55.     <u>Defendants Contacted DIRECTV And Falsely Claimed To Be</u>
<u>DIRECTV Customers And Falsely Claimed To Be Military Personnel Who Had</u>
<u>Received Deployment Instructions</u>.  After Defendants convinced DIRECTV
customers to "upgrade" their DIRECTV service by signing up for Dish Network,
Defendants called DIRECTV claiming to either be the customer or an authorized
representative of the customer.

56.     Without this phone call, the customer would have assumed that
DIRECTV was aware of the change in service since they had spoken to an
individual they believed to be associated with DIRECTV.  Additionally, without this
phone call, DIRECTV would have continued to charge the customer for their
DIRECTV service, unaware of Defendants' actions.

57.     When Defendants called impersonating a DIRECTV customer that had
not yet been with DIRECTV for the term of their contract with DIRECTV and were,
therefore, subject to a cancellation fee, Defendants falsely asserted to DIRECTV
representatives that the DIRECTV customer was an active member of the United
States military and had received deployment instructions.  As a result, DIRECTV
deactivated the subscribers' account without any cancellation fee.

58.     These false statements regarding (a) the identity of the caller and
(b) military deployment are in furtherance of Defendants' ruse to existing DIRECTV
customers that the Dish One Sales Force works for or is associated with DIRECTV.
Without the façade created by Defendants, DIRECTV would have continued to
charge the victims of Dish One Sales Force's scheme subscription fees or
cancellation fees for ending their relationship with DIRECTV.  Instead, the
customer appears to switch from DIRECTV to Dish Network without penalty or
interruption, furthering the false impression that the Dish One Sales Force works for
DIRECTV and/or that DIRECTV and Dish Network are the same company.

59.   <u>Known Victims of Defendants' Scheme.</u>   On or about May 2013, Defendant Janson visited the residence of Victim 1,[3] a then-DIRECTV customer over the age of 75 who resides in Sacramento, California.   Defendant Janson was wearing a shirt with both the DIRECTV and Dish Network logos on it and told Victim 1 that he could upgrade their existing DIRECTV service.   Defendant Janson never mentioned Dish Network to Victim 1.   Victim 1 then signed up for what they thought was an upgrade to their existing DIRECTV system.   When the installer returned for the "upgrade", Victim 1 saw that it was Dish Network and not DIRECTV and refused to let the installer into their residence.   Victim 1 contacted Defendant Janson about the installation and Defendant Janson told Victim 1 that Dish Network and DIRECTV were going to be merging soon.   Defendant Janson also told Victim 1 that he had cancelled Victim 1's DIRECTV account, he had already charged Victim 1 for Dish Network, and a cancellation of Dish Network would result in paying Dish Network cancellation fees.

60.   On June 4, 2013 at 11:18 a.m., Defendant Janson called DIRECTV claiming to be Victim 1.   Defendant Janson, acting as Victim 1, told DIRECTV that Victim 1 wished to cancel their DIRECTV account.   The DIRECTV representative, wishing to confirm Victim 1's identity, asked for their email or the last four digits of Victim 1's credit card.   Unable to do so, Defendant Janson hung up.   Defendant Janson called DIRECTV again on June 4, 2013 at 6:50 p.m. acting as Victim 1.   He again asked to cancel Victim 1's DIRECTV account and the account was closed.

61.   Ultimately, Victim 1 had their DIRECTV service reactivated.

62.   In June 2013, Defendant Janson visited the residence of Victim 2, a then-DIRECTV customer who resides in Sacramento, California.   Defendant Janson

---

[3]   In order to keep the identities of the known victims of Defendants' schemes private, DIRECTV will only identify these victims by number in this publicly filed document.

was wearing a shirt that had both the DIRECTV and Dish Network logos on it. Defendant Janson told Victim 2 that DIRECTV and Dish Network were the same company and that he could give them a better deal with DIRECTV.  Victim 2 then signed up for what they thought was an upgrade to their existing DIRECTV system. It was only when Dish Network arrived to install the new system that Victim 2 learned that they had apparently signed up for Dish Network and not an upgrade to their existing DIRECTV service.

63.     On June 4, 2013 at 8:11 p.m., a representative of the Dish One Sales Force called DIRECTV claiming to be the husband of Victim 2.  Acting as the husband of Victim 2, the caller told DIRECTV that Victim 2's husband was a member of the active military and would be relocating due to military orders.  As a result, DIRECTV cancelled Victim 2's account with DIRECTV.

64.     Victim 2 has continued to be a Dish Network subscriber since these events but expressed a preference to switch back to DIRECTV but for the potential cancellation fees that they would incur with Dish Network.

65.     In June 2013, Defendant Janson visited the residence of Victim 3, a then-DIRECTV customer who resides in Citrus Heights, California.  Defendant Janson was wearing a shirt that had both the DIRECTV and Dish Network logos on it.  Defendant Janson told Victim 3 that DIRECTV and Dish Network used to be the same company, that the government had forced the two companies to split, but that the two companies continued to work together.  When Victim 3 stated that he preferred DIRECTV and wanted to stay with DIRECTV, Defendant Janson told him that he could not give Victim 3 the best deal with DIRECTV because he was an existing DIRECTV customer, but he could give Victim 3 the best deal with Dish Network.  Defendant Janson also promised Victim 3 that he could get them out of their DIRECTV contract.   Based on these statements and promises, Victim 3 agreed to switch to Dish Network.

66.    On June 8, 2013 at 11:45 a.m., Defendant Janson called DIRECTV claiming to be Victim 3.  Defendant Janson, acting as Victim 3, told DIRECTV that Victim 3 was a member of the active military and would be relocating due to military orders.  As a result, DIRECTV cancelled Victim 3's account with DIRECTV.

67.    In June 2013, a member of the Dish One Sales Force named Cody visited the residence of Victim 4, a then-DIRECTV customer over the age of 65 who resides in Citrus Heights, California.  Cody was wearing a shirt with both the DIRECTV and Dish Network logos on it.  Absent the presence of the DIRECTV name and logo on that shirt, Victim 4 would not have let Cody into their residence.  Under the belief that the Dish One Sales Force representative was associated with DIRECTV and Dish Network and based on the promise that they would receive the exact same programming, including specific sports programming, Victim 4 agreed to sign-up for Dish Network.  Then, Victim 4 received a bill from DIRECTV for a cancellation fee.  Victim 4 called the member of the Dish One Sales Force about this charge and they were told that the charge would be taken care of.  Without further action by Victim 4, the charge was taken care of.

68.    On June 10, 2013 at 11:19 a.m., a representative of the Dish One Sales Force called DIRECTV claiming to be Victim 4.  Acting as Victim 4, the caller told DIRECTV that Victim 4 was a member of the active military and would be relocating due to military orders.  As a result, DIRECTV cancelled Victim 4's account with DIRECTV without a cancellation fee.

69.    After receiving Dish Network, Victim 4 learned that they had been deceived as to the programming, including the specific sports programming that was of specific interest to Victim 4.  As a result, Victim 4 switched back to DIRECTV.

70.    In June 2013, Defendant Janson visited the residence of Victim 5, a then-DIRECTV customer who resides in Citrus Heights, California.  Defendant Janson was wearing a shirt that had both the DIRECTV and Dish Network logos on

1   it.  Defendant Janson told Victim 5 that DIRECTV and Dish Network were the same

2   company.  Defendant Janson told Victim 5 that he could give them a better deal with

3   Dish Network.  He also told Victim 5 that he would take care of everything,

4   including cancelling the DIRECTV account.  Based on these statements, Victim 5

5   agreed to switch to Dish Network.

6        71.    On June 12, 2013 at 9:40 a.m., Defendant Janson called DIRECTV

7   claiming to be Victim 5.  Defendant Janson, acting as Victim 5, asked to deactivate

8   Victim 5's DIRECTV account.  As a result, DIRECTV cancelled Victim 5's account

9   with DIRECTV.

10        72.    Victim 5 remains a Dish Network subscriber as of this filing.

11        73.    In June 2013, Defendant Janson visited the residence of Victim 6, a

12   then-DIRECTV customer over the age of 65 who resides in Citrus Heights,

13   California.  Defendant Janson was wearing a shirt with both the DIRECTV and Dish

14   Network logos on it.  Defendant Janson told Victim 6 that DIRECTV and Dish

15   Network were the same company and had merged a couple of years earlier.  Victim

16   6 then signed up for what they thought was an upgrade to their existing DIRECTV

17   system, but in actuality signed up for Dish Network.  After Dish Network arrived to

18   install their service for Victim 6, Victim 6 called Defendant Janson, who repeated

19   the assertions that DIRECTV and Dish Network were the same company and had

20   merged a couple of years earlier.  Victim 6 called Dish Network to cancel any

21   account with them.  After explaining the situation that led to them supposedly

22   signing up for Dish Network, Victim 6 was asked by a Dish Network representative

23   what it would take to keep them with Dish Network.  Ultimately, Victim 6 switched

24   back to DIRECTV, however, as of August 28, Victim 6 continues to receive bills

25   from Dish Network.

26        74.    In June 2013, Defendant Janson visited the residence of Victim 7, a

27   then-DIRECTV customer over the age of 55 who resides in Sacramento, California.

28   He carried with him a binder containing the DIRECTV logo on it.  Defendant

1 Janson told Victim 7 that DIRECTV and Dish Network were the same company.

2 Based on this statement, Victim 7 agreed to sign up for Dish Network.

3    75.    On June 4, 2013 at 7:24 p.m., Defendant Janson called DIRECTV

4 claiming to be Victim 7.  Defendant Janson, acting as Victim 7, told DIRECTV that

5 Victim 7 wished to cancel their DIRECTV account.  As a result, DIRECTV

6 cancelled Victim 7's account with DIRECTV.

7    76.    On or about May 2013, Defendant Janson visited the residence of

8 Victim 8, a then-DIRECTV customer who resides in Citrus Heights, California.

9 Defendant Janson was wearing a shirt with both the DIRECTV and Dish Network

10 logos on it.  He told Victim 8 that DIRECTV and Dish Network were the same

11 company.  Based on this statement, Victim 8 agreed to sign up for Dish Network.

12 Victim 8 later found out that what Defendant Janson had told them was not true and

13 that DIRECTV and Dish Network are separate companies.  As a result, Victim 8

14 switched back to DIRECTV.

15    77.    In July 2013, Defendant Janson visited the residence of Victim 9, a

16 then-DIRECTV customer who resides in Sacramento, California.  Defendant Janson

17 was wearing a shirt that had the DIRECTV name and logo on it.  Defendant Janson

18 told Victim 9 that he was with DIRECTV and was interested in lowering her

19 DIRECTV bill.  Victim 9 then signed up for what they thought was an upgrade to

20 their existing DIRECTV system but turned out to be Dish Network.  Victim 9 was a

21 Dish Network subscriber but has switched back to DIRECTV.

22    78.    Defendants' Scheme Continues Today.  Complaints filed with the

23 Better Business Bureau (which are made publicly available on its website)

24 demonstrate that Defendants continue to engage in their scheme of fraudulent and

25 deceptive advertising practices in order to convert DIRECTV customers to Dish

26 Network.  These complaints further demonstrate the continuing nature of

27 Defendants' acts and its pervasiveness, beyond the state of California and likely

28 nationwide.

79.     The above instances of Defendants' improper actions are what DIRECTV is currently aware of.  On information and belief, there are additional instances of this practice by Defendants or their employees which will be brought to light through discovery.

## FIRST CAUSE OF ACTION

### (Violation of the Racketeering Influenced and Corrupt Organizations Act--18 U.SC. § 1962(c))

80.     DIRECTV re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 79 above, as though fully set forth herein, against all Defendants.

81.     At all material times herein, Defendants were associated with an enterprise engaged in activities which affected interstate commerce.  The Defendants are persons distinct from the enterprise and are members of the group comprising the enterprise.

82.     The enterprise consists of the association-in-fact of separate legal entities which seek to gain customers for Dish Network's television products and services.  These separate legal entities include Dish Network, which provides the television products and services and compensates Defendants for their activities soliciting and signing up new Dish Network subscribers; Dish One, which is a Dish Network retailer authorized to obtain customers for Dish Network; and Michael Hammond, Jeremy Hammond, Alexander Amini, Blake Janson, and others, who actively work to sign up customers for Dish Network.

83.     The enterprise had an ongoing organization with a framework for making decisions, functioned as a continuing unit and had ascertainable structure and systems of authority guiding its operations, separate and apart from the pattern of racketeering in which the enterprise engaged.  The structure of the "enterprise" consists of contracts by and between the legal entities associated in fact, which are

1   for the purpose of gaining customers for Dish Network's television products and

2   services.  These contracts consist of Dish One's Distributor Retailer Agreement with

3   Dish Network, any documentation involving the creation of Dish One and the

4   maintenance of its corporate structure, and any employment contracts Dish One has

5   with its employees.  These contracts provide the mechanism for decision making

6   and for controlling and directing the affairs of the "enterprise" on an ongoing basis.

7   The "enterprise" thereby had a continuity of structure and personnel.

8        84.    The common and shared purpose of the "enterprise" is to gain

9   customers for Dish Network's television products and services.  The function and

10   course of conduct of the "enterprise" is to gain customers for Dish Network's

11   television products and services.  Dish Network directs Dish One to gain customers

12   for its products and services.  This direction includes specific instructions as to how

13   to gain customers, where to direct Dish One's efforts to best obtain customers, and

14   what should not be done to obtain customers for Dish Network.  Dish One instructs

15   its officers and employees to gain customers for Dish Network's products and

16   services.  Dish One gives specific instructions as to how to gain customers and

17   where to direct their efforts to best obtain customers.  Dish One's officers and

18   employees, including Michael Hammond, Jeremy Hammond, Alexander Amini,

19   Blake Janson, and others, directly contact potential customers (or supervise those

20   directly contacting customers) in order to convince those customers to sign up for

21   Dish Network's products and services.

22        85.    The pattern of racketeering activity alleged is separate from the

23   enterprise and differs from the usual and daily activities of the enterprise.  The usual

24   and daily activities of the enterprise, to gain customers for Dish Network's products

25   and services described above, differ from the pattern of racketeering activity in

26   general because each of these activities can be and are, within the enterprise,

27   conducted legally.

28

86.     Specifically, Dish One is providing its employees with materials that contain the DIRECTV name and logo, insinuating that Dish One is associated with DIRECTV.  Dish One is also instructing its employees to actively tell potential customers that they are associated with DIRECTV and/or that Dish Network and DIRECTV are related companies.  Further, Dish One's personnel are calling DIRECTV, falsely posing as DIRECTV customers, and falsely seeking to cancel their DIRECTV service.  In some cases, Dish One's personnel call DIRECTV, falsely pose as a DIRECTV customer, and falsely claim that the DIRECTV customer is a member of the active military and has received deployment instructions.

87.     The pattern of racketeering activity would have been open-ended and continued for some time into the future, absent DIRECTV's discovery of the activity.  On information and belief, the pattern of racketeering activity began no later than May 2013.

88.     The enterprise receives substantial financial benefits from the alleged pattern of racketeering.  By falsely trading off of DIRECTV's name and the associated goodwill with DIRECTV's business, the enterprise is able to gain customers it would not have otherwise received (while taking those customers away from DIRECTV).  Additionally, the enterprise is able to further its deceit by calling DIRECTV, falsely claiming to be a customer (or the customer's authorized representative), and cancelling the customer's DIRECTV account.  This allows the customer, unaware of the actual discussion, to believe that DIRECTV was complicit in their signing up for Dish Network and reducing the possibility of those customers realizing the deceit and cancelling their Dish Network account.

89.     The "predicate acts" which constitute the alleged "pattern of racketeering activity" pursuant to 18 U.S.C. § 1961(5) involve two categories of "racketeering activity" set out in 18 U.S.C. § 1961(1): (1) "any act which is indictable under . . . title 18, United States Code: . . . section 1343 (relating to wire

fraud)"; and (2) "any act which is indictable under . . . title 18, United States Code: . . . section 2320 (relating to trafficking in goods or services bearing counterfeit marks)."

90.     <u>Wire Fraud</u>  Each of the acts indictable under 18 U.S.C. § 1343 (wire fraud), the specifics of which are set out below, involved Defendants knowingly causing the use of wire, radio or television communication to transmit with the specific intent and "for the purpose of executing" a "scheme or artifice to defraud" in that each was material and incidental to an essential element of the scheme.  The "scheme to defraud" included Defendants' use of dishonest methods and schemes, as set out above, to deprive DIRECTV and its customers, by trick, deceit, chicane or overreaching, of money, property and the right to honest services.

91.     The time, place, and contents of the alleged misrepresentations currently known to DIRECTV which constituted wire fraud constituting predicate offenses are as follows:

a.     On June 4, 2013 at 11:18 a.m., Defendant Janson called DIRECTV claiming to be Victim 1.  Defendant Janson, falsely acting as Victim 1, told DIRECTV that Victim 1 wished to cancel their DIRECTV account.  The DIRECTV representative, wishing to confirm Victim 1's identity, asked for their email or the last four digits of Victim 1's credit card.  Unable to do so, Defendant Janson hung up.  Defendant Janson called DIRECTV again on June 4, 2013 at 6:50 p.m. falsely acting as Victim 1.  He again asked to cancel Victim 1's DIRECTV account and the account was closed.

b.     On June 4, 2013 at 8:11 p.m., a representative of the Dish One Sales Force called DIRECTV falsely claiming to be the husband of Victim 2.  Acting as the husband of Victim 2, the caller falsely told DIRECTV that Victim 2's husband was a member of the active military and would be relocating due to military orders.  As a result, DIRECTV cancelled Victim 2's account with DIRECTV.

c.     On June 8, 2013 at 11:45 a.m., Defendant Janson called DIRECTV falsely claiming to be Victim 3.  Defendant Janson, acting as Victim 3, falsely told DIRECTV that Victim 3 was a member of the active military and would be relocating due to military orders.  As a result, DIRECTV cancelled Victim 3's account with DIRECTV.

d.     On June 10, 2013 at 11:19 a.m., a representative of the Dish One Sales Force called DIRECTV falsely claiming to be Victim 4.  Acting as Victim 4, the caller falsely told DIRECTV that Victim 4 was a member of the active military and would be relocating due to military orders.  As a result, DIRECTV cancelled Victim 4's account with DIRECTV without a cancellation fee.

e.     On June 12, 2013 at 9:40 a.m., Defendant Janson called DIRECTV falsely claiming to be Victim 5.  Defendant Janson, acting as Victim 5, asked to deactivate Victim 5's DIRECTV account.  As a result, DIRECTV cancelled Victim 5's account with DIRECTV.

f.     On June 4, 2013 at 7:24 p.m., Defendant Janson called DIRECTV falsely claiming to be Victim 7.  Defendant Janson, acting as Victim 7, told DIRECTV that Victim 7 wished to cancel their DIRECTV account.  As a result, DIRECTV cancelled Victim 7's account with DIRECTV.

92.     <u>Trafficking in Counterfeit Goods or Services</u>  Each of the acts indictable under 18 U.S.C. § 2320 (trafficking in counterfeit goods or services), the specifics of which are set out below, involved Defendants trafficking in goods and services and "knowingly us[ing] a counterfeit mark on or in connection with such goods and services," namely the counterfeit mark used was DIRECTV's name and logo on Defendants' sales materials, including the shirts worn by its sales personnel and the binders carried by those sales personnel.

93.     These predicate acts are spread over at least nine (9) different DIRECTV accounts.  They all fall precisely within the same pattern of racketeering activity, as set out in greater detail above.  Specifically, they involve (a) using the

counterfeit DIRECTV name and logo in connection with the trafficking of goods and services; (b) falsely claiming to DIRECTV to be a DIRECTV customer or an authorized representative of the DIRECTV customer; (c) falsely claiming that the DIRECTV customer wanted to cancel their DIRECTV account; and/or (d) falsely claiming that the DIRECTV customer was a member of the active military and had received deployment instructions.  These had the same purposes.  They falsely associated Defendants' sale of Dish Network's products and services with DIRECTV through the use of counterfeit marks.  Defendants went on to make false statements in order to convince DIRECTV to cancel the customer's account without penalty, so the customer would continue to believe that they had been approached by a DIRECTV representative.  As a result, Defendants were able to increase the number of customers they could gain for Dish Network's products and services.  The damages were the amount paid to Defendants for these fraudulently obtained accounts, the lost revenue for DIRECTV and damage to DIRECTV's goodwill and reputation.

94.    The predicate acts are related, as the acts were designed to work in conjunction with each other to assist the Defendants in converting existing DIRECTV customers to sign up for the products and services of Dish Network.

95.    The predicate acts had continuity, in that they occurred over the course of several months and, absent DIRECTV's discovery of these acts, they would have likely continued to be ongoing into the future.

96.    DIRECTV suffered direct injury to its business and property by reason of the violations of § 1962 by Defendants in the following respects:  (1) DIRECTV lost customers and the revenue from those customers directly based on Defendants' use of counterfeit marks and fraudulent activity, practices which form the basis of the alleged violations of § 1962; (2) DIRECTV lost its contractual right to claim early cancellation fees directly based on Defendants' fraudulent activity, practices which form the basis of the alleged violations of § 1962; and (3) DIRECTV has

suffered damage to its goodwill and reputation based on Defendants' fraudulent and illegal conduct.

97.     In each of these respects: (a) DIRECTV's injuries were the direct result of the alleged violations of § 1962; (b) DIRECTV was the intended target of the alleged violations of § 1962; (c) These types of injury were reasonably foreseeable consequences of the alleged violations of § 1962 since the actions directly targeted DIRECTV and its customers; and (d) There are no independent causes which have intervened between the alleged violations of § 1962 and the injury.

98.     Based on the foregoing, Defendants have violated 18 U.S.C. § 1962(c).

99.     As a direct and proximate result of Defendants' activities which were violative of the Racketeer Influenced Corrupt Organizations Act, DIRECTV has suffered substantial loss and damages to their property, goodwill and reputation. This loss entitles DIRECTV to recover treble damages against Defendants and costs of suit, including reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

## SECOND CAUSE OF ACTION
### (Conspiracy to Violate the Racketeering Influenced and Corrupt Organizations Act--18 U.SC. § 1962(d))

100.   DIRECTV re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 99 above, as though fully set forth herein, against all Defendants.

101.   Beginning no later than May 2013 and continuing through the present, Defendants conspired with one another to (a) use a counterfeit DIRECTV name and logo in connection with the trafficking of goods and services, in violation of 18 U.S.C. § 2320; (b) falsely claiming to DIRECTV (through a transmission by means of wire) to be a DIRECTV customer or an authorized representative of the DIRECTV customer, in violation of 18 U.S.C. § 1343; (c) falsely claiming (through a transmission by means of wire) that the DIRECTV customer wanted to cancel

1  their DIRECTV account, in violation of 18 U.S.C. § 1343; and (d) falsely claiming

2  (through a transmission by means of wire) that the DIRECTV customer was a

3  member of the active military and had received deployment instructions, in violation

4  of 18 U.S.C. § 1343.

5      102.   The object of the conspiracy was to gain customers for Dish Network's

6  products and services by portraying members of the Dish One Sales Force as being

7  associated with DIRECTV.

8      103.   Each of the Defendants, during this conspiracy, knew that Defendant

9  Dish One was not and could not offer DIRECTV to customers and that Defendant

10  Dish One was not associated with DIRECTV.

11      104.   Defendants agreed, among and between them, to place DIRECTV's

12  name and logo on the clothing worn by the Dish One Sales Force, to place

13  DIRECTV's name and logo on other paraphernalia used by the Dish One Sales

14  Force (including their binders), to call DIRECTV falsely claiming to be a

15  DIRECTV customer or an authorized representative of the DIRECTV customer, to

16  call DIRECTV falsely claiming that the DIRECTV customer wanted to cancel their

17  DIRECTV account, and to call DIRECTV falsely claiming that the DIRECTV

18  customer was a member of the active military and had received deployment

19  instructions.

20      105.   Defendants engaged in overt acts in furtherance of the conspiracy

21  including (a) instructing the Dish One Sales Force to wear clothing containing the

22  DIRECTV name and logo; (b) instructing the Dish One Sales Force to emphasize

23  their association with DIRECTV to current DIRECTV customers; (c) emphasizing

24  to customers an association with DIRECTV while knowing that no association

25  existed; (d) fraudulently calling DIRECTV while posing as a DIRECTV customer;

26  and (e) fraudulently calling DIRECTV, claiming to be a DIRECTV customer who is

27  in the active military and received deployment instructions.

28

106.   Defendants knew, through the repeated recurrence of the above actions, that they constituted a pattern of racketeering activity.

107.   DIRECTV suffered direct injury to its business and property by reason of the violations of § 1962 by Defendants in the following respects:  (1) DIRECTV lost customers and the revenue from those customers directly based on Defendants' use of counterfeit marks and fraudulent activity, practices which form the basis of the alleged violations of § 1962; (2) DIRECTV lost its contractual right to claim early cancellation fees directly based on Defendants' fraudulent activity, practices which form the basis of the alleged violations of § 1962; and (3) DIRECTV has suffered damage to its goodwill and reputation based on Defendants' fraudulent and illegal conduct.

108.   In each of these respects: (a) DIRECTV's injuries were the direct result of the alleged violations of § 1962; (b) DIRECTV was the intended target of the alleged violations of § 1962; (c) These types of injury were reasonably foreseeable consequences of the alleged violations of § 1962 since the actions directly targeted DIRECTV and its customers; and (d) There are no independent causes which have intervened betweeen the alleged violations of § 1962 and the injury.

109.   Based on the foregoing, Defendants have violated 18 U.S.C. § 1962(d).

110.   As a direct and proximate result of Defendants' activities which were violative of the Racketeer Influenced Corrupt Organizations Act, DIRECTV has suffered substantial loss and damages to their property, goodwill and reputation. This loss entitles DIRECTV to recover treble damages against Defendants and costs of suit, including reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

### THIRD CAUSE OF ACTION

### (Trademark Infringement--15 U.S.C. § 1114)

111.   DIRECTV re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above, as though fully set forth herein, against all Defendants.

112.   DIRECTV is the true and rightful owner of a number of trade and service marks registered on the Principal Register of the United States Patent and Trademark Office, including but not limited to Reg. Nos. 2,698,197 and 3,085,522 ("DIRECTV" service mark, registered March 18, 2003 and April 25, 2006 respectively); Reg. No. 1,989,358 (DIRECTV cyclone design, registered July 23, 1996); and Reg. No. 2,372,271 (DIRECTV cyclone design, registered August 1, 2000) (the "Marks").  See Exhs. A and B.

113.   The Marks are arbitrary and fanciful and thus inherently distinctive. Additionally, because of DIRECTV's fair and honorable dealings with its customers, and investment of time, effort, and other resources to promote and protect the Marks, the Marks now enjoy valuable goodwill in the United States (and other parts of the world).  The relevant consuming public has come to recognize products and services bearing the Marks as high quality products and services connected with or offered by DIRECTV and its authorized dealers.

114.   Defendants have knowledge that the Marks belong to DIRECTV. Notwithstanding DIRECTV's statutory rights in the Marks, Defendants have used and commercially exploited, and continue to use and commercially exploit, the Marks in connection with the distribution sale and offering for sale of goods and services which directly compete with those offered by DIRECTV.  Defendants' conduct is intended to cause the public to believe, erroneously, that the products and services sold by Defendants emanate from, or are endorsed or sponsored by, DIRECTV.  Even as to those consumers who eventually realize that the Defendants' products and services offered for sale thereon, are not sponsored or authorized by

1   DIRECTV, Defendants have benefited from initial interest confusion among

2   consumers and the goodwill associated with DIRECTV's name.

3       115.   Defendants' actions in this regard have at all times been without

4   DIRECTV's authorization or consent.  Defendants' acts constitute willful and

5   deliberate direct infringement of DIRECTV's Marks in violation of section 32 of the

6   Lanham Act, 15 U.S.C. § 1114.

7       116.   Defendants' acts complained of herein have damaged, and will continue

8   to damage, DIRECTV irreparably.  DIRECTV has no adequate remedy at law for

9   these wrongs and injuries.  The damage to DIRECTV includes harm to its goodwill

10  and reputation in the marketplace that cannot be sufficiently compensated

11  financially.  DIRECTV is, therefore, entitled to a preliminary and permanent

12  injunction restraining and enjoining Defendants and their agents, servants,

13  employees, and all persons acting thereunder, in concert therewith or on their behalf,

14  from using the Marks, or any colorable imitations thereof, in connection with the

15  sale, promotion and/or advertising of Defendants' and/or any third-party's products

16  and services, in any manner likely to cause confusion, mistake or to deceive the

17  public as to the source or origin of the Defendants' products and services.

18      117.   Further, Defendants have willfully used DIRECTV's Marks in a

19  manner calculated to cause consumer confusion in the sale, offering for sale, and

20  advertising of its products and services.  Accordingly, DIRECTV is entitled to

21  recover three times its damages sustained as a result of Defendants' unlawful

22  conduct, as well as three times Defendants' profits, the costs of the suit and

23  reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

24

25

26

27

28

## FOURTH CAUSE OF ACTION

## (False Designation of Origin and False Description--15 U.S.C. § 1125(a))

118.   DIRECTV  re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 117 above, as though fully set forth herein, against all Defendants.

119.   Defendants' use of the Marks is a false designation of origin or a false description or representation that wrongfully and falsely designates the goods and services promoted by Defendants as originating from or connected with DIRECTV and constitutes the utilization of false descriptions or representations in interstate commerce.

120.   Defendants' actions in this regard have at all times been without DIRECTV's authorization or consent.  Defendants' acts constitute willful and deliberate direct and contributory infringement of DIRECTV's Marks in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

121.   Defendants' acts complained of herein have damaged, and will continue to damage, DIRECTV irreparably.  DIRECTV has no adequate remedy at law for these wrongs and injuries.  The damage to DIRECTV includes harm to its goodwill and reputation in the marketplace that cannot be sufficiently compensated financially.  DIRECTV is, therefore, entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, employees, and all persons acting thereunder, in concert therewith or on their behalf, from using the Marks, or any colorable imitations thereof, in connection with the sale, promotion and/or advertising of Defendants' and/or any third party's products and services, in any manner likely to cause confusion, mistake or to deceive the public as to the source or origin of the Defendants' products and services.

122.   Defendants have willfully used DIRECTV's Marks in a manner calculated to cause consumer confusion in the sale, offering for sale, and advertising of their products and services.  Accordingly, DIRECTV is entitled to recover three

1   times its damages sustained as a result of Defendants' unlawful conduct, as well as

2   three times Defendants' profits, the costs of the suit and reasonable attorneys' fees,

3   pursuant to 15 U.S.C. § 1117.

4

5                          **FIFTH CAUSE OF ACTION**

6              **(Federal Trademark Dilution--15 U.S.C. § 1125(c))**

7        123.   DIRECTV re-alleges and incorporates by reference the allegations

8   contained in paragraphs 1 through 122 above, as though fully set forth herein,

9   against all Defendants.

10       124.   DIRECTV has used the Marks in interstate commerce for many years

11  to identify itself, its service and its products.  As a result of DIRECTV's active use,

12  publicity and advertising, the Marks have become famous, distinctive and

13  inextricably identified by the relevant consuming public with DIRECTV's superior

14  products and services.

15       125.   Defendants' use of the Marks has likely diluted, and will continue to

16  likely dilute, the distinctive and famous quality of DIRECTV's Marks by associating

17  them with misleading and incorrect information regarding DIRECTV's products and

18  services in direct violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

19       126.   Defendants' acts complained of herein have damaged, and will continue

20  to damage, DIRECTV irreparably.  DIRECTV has no adequate remedy at law for

21  these wrongs and injuries.  The damage to DIRECTV includes harm to its goodwill

22  and reputation in the marketplace that cannot be sufficiently compensated

23  financially.  DIRECTV is, therefore, entitled to a preliminary and permanent

24  injunction restraining and enjoining Defendants' and their agents, servants,

25  employees, and all persons acting thereunder, in concert therewith or on its behalf,

26  from using the Marks, or any colorable imitations thereof, in connection with the

27  sale, promotion and/or advertising of Defendants' and/or any third party's products

28

1   and services, in any manner likely to cause confusion, mistake or to deceive the

2   public as to the source or origin of the Defendants' products and services.

3       127.   Defendants have willfully used DIRECTV's Marks in a manner

4   calculated to cause consumer confusion in the sale, offering for sale, and advertising

5   of their products and services.  Accordingly, DIRECTV is entitled to recover three

6   times its damages sustained as a result of Defendants' unlawful conduct, as well as

7   three times Defendants' profits, the costs of the suit and reasonable attorneys' fees,

8   pursuant to 15 U.S.C. § 1117.

9

10   **SIXTH CAUSE OF ACTION**

11   **(Federal False Advertising Claim--15 U.S.C. § 1125(a))**

12       128.   DIRECTV re-alleges and incorporates by reference the allegations

13   contained in paragraphs 1 through 127 above, as though fully set forth herein,

14   against all Defendants.

15       129.   Defendants, individually and through their employees, made,

16   distributed, caused to be distributed, authorized the distribution of, and/or otherwise

17   disseminated false and/or misleading statements in their advertising.

18       130.   The false and/or misleading statements are as follows:

19           a.   The Dish One Sales Force is associated with DIRECTV;

20           b.   DIRECTV and Dish Network are the same company, merged,

21   and/or about to become the same company;

22           c.   The television services provided by DIRECTV and Dish

23   Network are the same;

24           d.   The Dish One Sales Force is offering customers the ability to

25   "upgrade" their existing DIRECTV service;

26           e.   DIRECTV customers in the neighborhood have complained to

27   Dish One about DIRECTV; and

28

f.      The Dish One Sales Force wearing and/or displaying the DIRECTV name and logo on their clothing, binders, and other paraphernalia.

131.   These false and/or misleading statements are material to the DIRECTV customers approached by the Dish One Sales Force.  These are existing DIRECTV customers that have an existing relationship with DIRECTV as a company and have already made the affirmative decision to have DIRECTV provide them with television service.  If anyone approaches DIRECTV customers falsely claiming to be associated with DIRECTV, that is a material fact towards whether the DIRECTV customer will listen to what is being said and trust that individual.

132.   Defendants knew or should have known that its advertising was false and/or misleading.

133.   Defendants have conveyed this false and/or misleading information orally, graphically and in print.

134.   Defendants disseminated false and/or misleading statements to DIRECTV customers for the purpose of encouraging those customers to switch from DIRECTV to Dish Network.

135.   Upon information and belief, the false and/or misleading statements disseminated by Defendants have actually deceived and/or have the tendency to deceive a substantial number of DIRECTV customers.

136.   Upon information and belief, the deception caused by these unlawful acts was material in that it was likely to influence the purchasing decision of potential customers.

137.   Upon information and belief, the false and/or misleading statements disseminated by Defendants had and continues to have an effect on interstate commerce.

138.   As a result of Defendants' acts of false and misleading descriptions of fact, false and misleading and/or deceptive representations and unfair competition,

1　DIRECTV has suffered, currently suffers, and will continue to suffer damage and

2　irreparable injury, including to its business, reputation and good will.

3　　　139.　The false and/or misleading statements and information disseminated

4　by Defendants constitute violations of Section 43(a) of the Lanham Act (15 U.S.C. §

5　1125(a)).

6　　　140.　Pursuant to 15 U.S.C. § 1117, DIRECTV is entitled to damages for

7　Defendants' Lanham Act violations, an accounting for profits made by Defendants

8　while the Dish One Sales Force claimed to be associated with DIRECTV and/or

9　wore shirts with the DIRECTV name and logo or used binders with the DIRECTV

10　name and logo, as well as recovery of costs of this action.  Furthermore, DIRECTV

11　is informed and believes, and on that basis alleges, that Defendants' conduct was

12　undertaken willfully and with the intention of causing confusion, mistake or

13　deception, making this an exceptional case entitling DIRECTV to recover additional

14　damages and reasonable attorney fees pursuant to 15 U.S.C. § 1117.

15　　　141.　Defendants' conduct has caused, and will continue to cause, immediate

16　and irreparable harm to DIRECTV for which there is no adequate remedy at law.

17　As such, DIRECTV is entitled to injunctive relief as set forth in 15 U.S.C. § 1116.

18

19　　　　　　　　　　**SEVENTH CAUSE OF ACTION**

20　　　　　**(California False Advertising—Cal. Bus. & Prof. § 17500)**

21　　　142.　DIRECTV re-alleges and incorporates by reference the allegations

22　contained in paragraphs 1 through 141 above, as though fully set forth herein,

23　against all Defendants.

24　　　143.　Defendants, individually and through their employees, made,

25　distributed, caused to be distributed, authorized the distribution of, and/or otherwise

26　disseminated false and/or misleading statements in their advertising.

27　　　144.　The false and/or misleading statements are as follows:

28　　　　　　a.　The Dish One Sales Force is associated with DIRECTV;

1          b.     DIRECTV and Dish Network are the same company, merged,

2    and/or about to become the same company;

3          c.     The television services provided by DIRECTV and Dish

4    Network are the same;

5          d.     The Dish One Sales Force is offering customers the ability to

6    "upgrade" their existing DIRECTV service;

7          e.     DIRECTV customers in the neighborhood have complained to

8    Dish One about DIRECTV; and

9          f.     The Dish One Sales Force wearing and/or displaying the

10    DIRECTV name and logo on their clothing, binders, and other paraphernalia.

11        145.   These false and/or misleading statements are material to the DIRECTV

12    customers approached by the Dish One Sales Force.  These are existing DIRECTV

13    customers that have an existing relationship with DIRECTV as a company and have

14    already made the affirmative decision to have DIRECTV provide them with

15    television service.  If anyone approaches DIRECTV customers falsely claiming to

16    be associated with DIRECTV, that is a material fact towards whether the DIRECTV

17    customer will listen to what is being said and trust that individual.

18        146.   Defendants knew or should have known that its advertising was false

19    and/or misleading.

20        147.   Defendants have conveyed this false and/or misleading information

21    orally, graphically and in print.

22        148.   Defendants disseminated false and/or misleading statements to

23    DIRECTV customers for the purpose of encouraging those customers to switch

24    from DIRECTV to Dish Network.

25        149.   Upon information and belief, the false and/or misleading statements

26    disseminated by Defendants have actually deceived and/or have the tendency to

27    deceive a substantial number of DIRECTV customers.

28

150.   Upon information and belief, the deception caused by these unlawful acts was material in that it was likely to influence the purchasing decision of potential customers.

151.   Upon information and belief, the false and/or misleading statements disseminated by Defendants had and continues to have an effect on interstate commerce.

152.   As a result of Defendants' acts of false and misleading descriptions of fact, false and misleading and/or deceptive representations and unfair competition, DIRECTV has suffered, currently suffers, and will continue to suffer damage and irreparable injury, including to its business, reputation and good will.

153.   The false and/or misleading statements and information disseminated by Defendants constitute violations of Section 17500 of the California Business and Professions Code.

154.   Pursuant to this Section, DIRECTV is entitled to a fine imposed for each of Defendants' false advertising in an amount to be determined at trial.

155.   Defendants' conduct has caused, and will continue to cause, immediate and irreparable harm to DIRECTV for which there is no adequate remedy at law. As such, DIRECTV is entitled to injunctive relief as set forth in Cal. Bus. & Prof. § 17535.


## EIGHTH CAUSE OF ACTION
### (Fraud)

156.   DIRECTV re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 155 above, as though fully set forth herein, against all Defendants.

157.   Defendants Dish One, Amini, Janson, and Doe Defendants made a number of material misrepresentations to then-current DIRECTV customers in an attempt to persuade those customers to switch to DIRECTV.

158.   Dish One Sales Force, at the instruction of Defendants Dish One, Michael Hammond, and Jeremy Hammond, made a number of material misrepresentations to then-current DIRECTV customers in an attempt to persuade those customers to switch to DIRECTV.

159.   The misrepresentations made by Dish One Sales Force to DIRECTV customers include, but are not limited to:

a.      The affirmative misrepresentation that the Dish One Sales Force is associated with DIRECTV;

b.      The affirmative misrepresentation that DIRECTV and Dish Network are the same company, merged, and/or about to become the same company;

c.      The affirmative misrepresentation that the television services provided by DIRECTV and Dish Network are the same;

d.      The affirmative misrepresentation that the Dish One Sales Force is offering customers the ability to "upgrade" their existing DIRECTV service;

e.      The affirmative misrepresentation that DIRECTV customers in the neighborhood have complained to Dish One about DIRECTV;

f.      The affirmative misrepresentation that whether a DIRECTV customer has DIRECTV or Dish Network does not make a difference to Dish One;

g.      The suppression of the fact that the Dish One Sales Force is not authorized to wear or display the DIRECTV name and logo; and

h.      The suppression of the fact that the Dish One Sales Force is only authorized to sell Dish Network.

160.   Other misrepresentations may have been made to DIRECTV customers, but that information is in Defendants' possession.

161.   The above misrepresentations to DIRECTV customers were material to allowing the Dish One Sales Force to present their sales pitch to the DIRECTV customer and material to customers changing their television service from

1   DIRECTV to Dish Network.  Absent those misrepresentations, DIRECTV

2   customers would not have listened to the Dish One Sales Force's sales pitch and/or

3   would not have switched from DIRECTV to Dish Network.

4       162.   Defendants Amini, Janson, and other members of the Dish One Sales

5   Force made a number of material misrepresentations to DIRECTV in an attempt to

6   persuade DIRECTV to waive cancellation fees for certain DIRECTV customers.

7       163.   Dish One Sales Force, at the instruction of Defendants Dish One,

8   Michael Hammond, and Jeremy Hammond, made a number of material

9   misrepresentations to DIRECTV in an attempt to persuade DIRECTV to waive

10   cancellation fees for certain DIRECTV customers.

11       164.   The misrepresentations made by Dish One Sales Force to DIRECTV

12   are as follows:

13         a.   The affirmative misrepresentation that the Dish One Sales Force

14   is a DIRECTV customer calling about the customer's own account;

15         b.   The affirmative misrepresentation that the Dish One Sales Force

16   has been authorized by a DIRECTV customer to call on their behalf; and

17         c.   The affirmative misrepresentation that the DIRECTV customer

18   (either the customer that the Dish One Sales Force claimed to be or calling on behalf

19   of) is an active member of the United States military and has recently received

20   deployment instructions.

21       165.   Other misrepresentations may have been made to DIRECTV, but that

22   information is in Defendants' possession.

23       166.   The above misrepresentations to DIRECTV were material to allowing

24   the fraud on DIRECTV's customers to go undiscovered and material to DIRECTV

25   releasing the customers from their existing contract without cancellation fee or

26   penalty.  Without those misrepresentations, DIRECTV would have discovered

27   Defendants' fraud on DIRECTV customers earlier and DIRECTV would not have

28

Case No.
COMPLAINT: DEMAND FOR JURY TRIAL

1    allowed its customers to cancel their DIRECTV subscriptions without paying the

2    contractually agreed-upon cancellation fee.

3         167.   Defendants intended DIRECTV customers and DIRECTV to rely on

4    their affirmative misrepresentations of material facts and suppression of facts

5    without which were likely to mislead DIRECTV customers and DIRECTV.

6         168.   Defendants knew that each of these misrepresentations were false, or,

7    at the very least, acted with reckless disregard as to the truth of the representations.

8    Defendants know that they are not associated with DIRECTV, are not authorized to

9    sell DIRECTV, that DIRECTV and Dish Network are not the same company, that

10   Dish One has not received complaints from DIRECTV customers, that Defendants

11   were not the DIRECTV customers they claimed to DIRECTV to be, and that those

12   DIRECTV customers were not in the active military or being deployed.

13        169.   As a direct and proximate result of Defendants' affirmative

14   misrepresentations of material facts and suppression of facts without which were

15   likely to mislead, DIRECTV has suffered financial damages and losses.  The exact

16   amount of DIRECTV's damages and losses will be determined at the time of trial.

17        170.   In performing the foregoing acts and omissions, Defendants acted (or

18   failed to act) with the intent to injure DIRECTV and acted with malice, oppression,

19   and or fraud.  As a result, DIRECTV intends to seek punitive damages in an amount

20   to be decided at the time of trial.

21

22                        **NINTH CAUSE OF ACTION**

23                        **(Conspiracy to Commit Fraud)**

24        171.   DIRECTV re-alleges and incorporates by reference the allegations

25   contained in paragraphs 1 through 170 above, as though fully set forth herein,

26   against all Defendants.

27        172.   Defendants Dish One, Amini, Janson, Michael Hammond, Jeremy

28   Hammond and Doe Defendants, collectively, formed and operated a conspiracy.

173.   Defendants' conspiracy was created and operated for the basis of committing the wrongful acts of fraud described above.

174.   Each of the Defendants agreed to a common design to commit the wrongful acts of fraud described above.

175.   As a result, the Defendants who did not directly participate in the fraudulent actions themselves are separately liable for those actions.

176.   As a direct and proximate result of Defendants' conspiracy to commit the fraudulent actions describe above, DIRECTV has suffered financial damages and losses.  The exact amount of DIRECTV's damages and losses will be determined at the time of trial.

177.   In performing the foregoing acts and omissions, Defendants acted with the intent to injure DIRECTV and acted with malice, oppression, and or fraud.  As a result, DIRECTV intends to seek punitive damages in an amount to be decided at the time of trial.

## TENTH CAUSE OF ACTION
### (Negligent Misrepresentation)

178.   DIRECTV re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 177 above, as though fully set forth herein, against all Defendants.

179.   Defendants Amini, Janson, and Doe Defendants made a number of material misrepresentations to DIRECTV in an attempt to persuade DIRECTV to waive cancellation fees for certain DIRECTV customers.

180.   Dish One Sales Force, at the instruction of Defendants Dish One, Michael Hammond, and Jeremy Hammond, made a number of material misrepresentations to DIRECTV in an attempt to persuade DIRECTV to waive cancellation fees for certain DIRECTV customers.

181.   The misrepresentations made by Dish One Sales Force to DIRECTV are as follows:

a.      The affirmative misrepresentation that the Dish One Sales Force is a DIRECTV customer calling about the customer's own account;

b.      The affirmative misrepresentation that the Dish One Sales Force has been authorized by a DIRECTV customer to call on their behalf; and

c.      The affirmative misrepresentation that the DIRECTV customer (either the customer that the Dish One Sales Force claimed to be or called on behalf of) is an active member of the United States military and has recently been deployed overseas.

182.   The Dish One Sales Force made the misrepresentations without any reasonable ground for believing the misrepresentations were true.  None of the DIRECTV customers who the Dish One Sales Force claimed to be or called on behalf of were active military personnel nor had they been deployed overseas.

183.   These misrepresentations were made by the Dish One Sales Force with the intent that DIRECTV would act in reliance on this information and cancel the DIRECTV customer's account with DIRECTV without the customer incurring the contractually agreed-upon cancellation penalty.

184.   DIRECTV was justified in its reliance on Defendants' misrepresentations.

185.   DIRECTV did rely on Defendants' misrepresentations because, without those statements, DIRECTV would not have allowed its customers to cancel their DIRECTV subscriptions without paying the contractually agreed-upon cancellation fee.

186.   As a direct and proximate result of Defendants' affirmative misrepresentations of material facts, DIRECTV has suffered financial damages and losses.  The exact amount of DIRECTV's damages and losses will be determined at the time of trial.

# ELEVENTH CAUSE OF ACTION

## (Unfair Competition--Cal. Bus. & Prof. § 17200)

187.   DIRECTV re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 186 above, as though fully set forth herein, against all Defendants.

188.   As discussed above, Defendants have engaged in unlawful, unfair and/or fraudulent business acts.

189.   As discussed above, Defendants have engaged in unfair, deceptive, untrue, and/or misleading advertising.

190.   Pursuant to California Business & Professions Code § 17203, Defendants' unlawful, unfair or fraudulent business acts and Defendants' unfair, deceptive, untrue, or misleading advertising should be enjoined, preventing further use of these practices.

191.   Additionally, pursuant to California Business & Professions Code § 17203, DIRECTV is entitled to a court order and/or judgment sufficient to restore the money or property Defendants acquired through its acts of unfair competition.

# TWELFTH CAUSE OF ACTION

## (Libel)

192.   DIRECTV re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 191 above, as though fully set forth herein, against all Defendants.

193.   Defendants have caused to be published in writing, printing, picture, or by some other fixed method a number of false representations, including but not limited to:

   a.      That Dish One and/or the Dish One Sales Force is associated with DIRECTV, through the presence of the DIRECTV name and logo on the Dish One Sales Force's clothing, binders, and other paraphernalia.

1    194.   This is a false statement of fact.

2    195.   This was published in writing or published through other fixed media

3 to third-parties.

4    196.   Each of the statements to third-parties were of or concerning

5 DIRECTV.

6    197.   Each of the statements to third-parties tend to injure DIRECTV in its

7 trade or business through a decline of business, loss of goodwill and/or injury to

8 DIRECTV's business reputation.

9    198.   Each of the statements caused actual damage.

10    199.   Defendants maliciously caused each of the statements to be published

11 in fixed media.

12    200.   As a direct and proximate result of Defendants' statements, DIRECTV

13 has been damaged through the loss of DIRECTV customers and damage to its

14 overall reputation.

15    201.   As a result, DIRECTV is entitled to compensatory, special, and

16 punitive damages.  The exact amount of DIRECTV's damages and losses will be

17 determined at the time of trial.

18

19              **THIRTEENTH CAUSE OF ACTION**

20                    **(Slander)**

21    202.   DIRECTV re-alleges and incorporates by reference the allegations

22 contained in paragraphs 1 through 201 above, as though fully set forth herein,

23 against all Defendants.

24    203.   Defendants have caused to be disseminated orally a number of false

25 representations, including but not limited to:

26       a.      That Dish One and/or the Dish One Sales Force are associated

27 with DIRECTV;

28

1          b.      That DIRECTV and Dish Network are the same company,

2  merged, and/or about to become the same company;

3          c.      That the television services provided by DIRECTV and Dish

4  Network are the same;

5          d.      That DIRECTV customers in the neighborhood have complained

6  to Dish One about DIRECTV;

7          e.      That DIRECTV customers called in to Dish One and complained

8  about DIRECTV's prices and promotions;

9          f.      That it made sense for all DIRECTV customers in the

10  neighborhood to switch to Dish Network; and

11          g.      That Dish One does all of the installations of Dish Network and

12  DIRECTV in a given area.

13      204.   Each of these are false statements of fact as either slander *per se* or, in

14  the alternative, slander *per quod*.

15      205.   Each were disseminated orally to third-parties.

16      206.   Each of the statements were of or concerning DIRECTV.

17      207.   Each of the statements tend to injure DIRECTV in its trade or business

18  through a decline of business, loss of goodwill and/or injury to DIRECTV's business

19  reputation.

20      208.   Each of the statements caused actual damage.

21      209.   Defendants maliciously caused each of the statements to be

22  disseminated orally.

23      210.   As a direct and proximate result of Defendants' statements, DIRECTV

24  has been damaged through the loss of customers and damage to its overall

25  reputation.

26      211.   As a result, DIRECTV is entitled to compensatory, special, and

27  punitive damages.  The exact amount of DIRECTV's damages and losses will be

28  determined at the time of trial.

## FOURTEENTH CAUSE OF ACTION

### (Trade Libel)

212.   DIRECTV re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 211 above, as though fully set forth herein, against all Defendants.

213.   Defendants have caused to be published in writing and disseminated orally a number of false representations, including but not limited to:

a.   That the Dish One Sales Force is associated with DIRECTV, through oral statements and the presence of the DIRECTV name and logo on the Dish One Sales Force's clothing, binders, and other paraphernalia;

b.   That DIRECTV and Dish Network are the same company, merged, and/or about to become the same company;

c.   That the television services provided by DIRECTV and Dish Network are the same;

d.   That DIRECTV customers in the neighborhood have complained to Dish One about DIRECTV;

e.   That DIRECTV customers called in to Dish One and complained about DIRECTV's prices and promotions;

f.   That it made sense for all DIRECTV customers in the neighborhood to switch to Dish Network; and

g.   That Dish One does all of the installations of Dish Network and DIRECTV in a given area.

214.   Each of these are false statements of fact.

215.   Each were published in writing or disseminated orally to third-parties.

216.   Each of the statements were of or concerning DIRECTV, disparaging the quality of DIRECTV's employees, its products, its services, and its reputation.

217.   Each of the statements were a material and substantial part in inducing DIRECTV customers to not deal with DIRECTV and instead to sign up with Dish Network.

218.   As a direct and proximate result of Defendants' statements, DIRECTV has been damaged through the loss of DIRECTV customers and damage to its overall reputation.

219.   As a result, DIRECTV is entitled to injunctive relief as well as compensatory and punitive damages.  The exact amount of DIRECTV's damages and losses will be determined at the time of trial.

## FIFTEENTH CAUSE OF ACTION
### (Tortious Interference With Contract)

220.   DIRECTV re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 219 above, as though fully set forth herein, against all Defendants.

221.   DIRECTV has valid and existing contracts with each of its subscribers.

222.   Defendants, individually or through their employees, have knowledge of DIRECTV's contract with its subscribers.

223.   Each DIRECTV customer is under contract with DIRECTV.

224.   Based on the efforts described above, Defendants interfered with those contracts by seeking, through fraudulent means, to convince customers to disrupt their contract with DIRECTV.

225.   These efforts have resulted in the breach or disruption of DIRECTV's contract with certain of its customers.

226.   The breach or disruption of these contracts have caused damages to DIRECTV.

227.   Defendants' interference with DIRECTV's contracts with its customers has been done with oppression, fraud, or malice.

228.   As a result, DIRECTV is entitled to compensatory and punitive damages.  The exact amount of DIRECTV's damages and losses will be determined at the time of trial.

## SIXTEENTH CAUSE OF ACTION

### (Intentional Interference With Prospective Economic Advantage)

229.   DIRECTV re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 228 above, as though fully set forth herein, against all Defendants.

230.   An existing business relationship was present between DIRECTV and each of its customers when a member of the Dish One Sales Force approached those DIRECTV customers.

231.   There was the probability of future economic benefit from the business relationship of DIRECTV and its customers prior to Defendants' actions.

232.   Defendants interfered with DIRECTV's prospective economic advantage with its customers, causing DIRECTV injury.

233.   As described above, Defendants engaged in wrongful conduct aside from the interference itself and outside the boundaries of fair competition.

234.   Defendants knew of DIRECTV's prospective business advantage with its customers and intended to interfere with that business advantage.

235.   Defendant's intentional interference caused DIRECTV damages.  The exact amount of DIRECTV's damages and losses will be determined at the time of trial.

## SEVENTEENTH CAUSE OF ACTION

### (Unjust Enrichment)

236.   DIRECTV re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 235 above, as though fully set forth herein, against all Defendants.

237.   Defendants have received benefits from the actions described above. Defendants switched customers from DIRECTV to Dish Network, thereby receiving payments from Dish Network for these new subscribers.

238.   Defendants' benefits described above came at DIRECTV's expense, through the loss of DIRECTV customers and the revenue streams from each of those customers.

239.   As described above, Defendants' acquisition of customers for Dish Network at DIRECTV's expense was through unfair and unjust methods, including but not limited to fraudulent misrepresentations to coerce DIRECTV customers to switch to Dish Network.

240.   DIRECTV is entitled to restitution for the amount which Defendants were enriched at the expense of DIRECTV in an amount determined at trial.


## PRAYER FOR RELIEF

Wherefore, DIRECTV demands judgment:

1.     Preliminarily and permanently enjoining and restraining Defendants, and all those acting in concert or participation with them, from:

     a.     Engaging in any further instances of illegal racketeering activity pursuant to the RICO enterprise described herein;

     b.     Representing themselves as being associated with DIRECTV or selling DIRECTV's products and services;

     c.     Representing that DIRECTV and Dish Network are the same company or about to merge;

1          d.      Representing that Defendants are an authorized installation

2    company for DIRECTV's products and services;

3          e.      Falsely representing that Defendants have received calls from

4    DIRECTV customers complaining about their DIRECTV service;

5          f.      Falsely representing that DIRECTV and Dish Network are the

6    same television service;

7          g.      Making any unauthorized use of DIRECTV's registered

8    trademarks and service marks, including but not limited to using DIRECTV's name

9    and logo on apparel, binders, or other written materials ;

10          h.      Falsely representing themselves to DIRECTV to be a DIRECTV

11   customer or authorized to call on behalf of a DIRECTV customer;

12          i.      Falsely representing to DIRECTV that a DIRECTV customer is

13   an active member of the United States military and has just received deployment

14   instructions;

15          j.      Making any statement or representation whatever, or using any

16   false designation of origin or false description, or performing any act which can, or

17   is likely to, lead the trade or public, or individual members thereof, to believe that

18   any product or service manufactured, distributed, promoted or sold by Defendants is

19   in any manner associated or connected with DIRECTV, or is sold, manufactured,

20   licensed, sponsored and approved, or authorized by DIRECTV;

21          k.      Engaging in any other activity constituting an infringement of

22   DIRECTV's trademarks, service marks, or DIRECTV's rights in, or to use or to

23   exploit, said trademarks and service marks, or constituting any dilution of

24   DIRECTV's trade names, reputation, or goodwill;

25          l.      Assisting, aiding, or abetting any other person or business entity,

26   or engaging in or performing any of the activities referred to in

27   subparagraphs (a) through (j) above.

28

1    2.    Directing such other relief as the Court may deem appropriate to

2  prevent consumers from deriving any erroneous impression that any product or

3  service manufactured, sold, or otherwise circulated or promoted by the Defendants

4  is authorized by DIRECTV or related in any way to DIRECTV's services or

5  products.

6    3.    Awarding to DIRECTV actual, statutory and punitive damages.

7    4.    Awarding to DIRECTV treble damages, together with their reasonable

8  attorneys' and investigators' fees and prejudgment interest.

9    5.    Awarding to DIRECTV such further relief as the Court may deem just

10  and proper, together with the costs and disbursements that DIRECTV has incurred

11  in connection with this action.

12

13  DATED: December 2, 2013          QUINN EMANUEL URQUHART &
                                     SULLIVAN. LLP
14

15                                   By */s/ Michael E. Williams*
16                                       Michael E. Williams
                                         Attorneys for Plaintiff DIRECTV. LLC.
17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

DIRECTV respectfully requests a jury trial on all issues triable thereby.


DATED: December 2, 2013          QUINN EMANUEL URQUHART &
                                 SULLIVAN, LLP


                                 By /s/ Michael E. Williams
                                    Michael E. Williams
                                    Attorneys for Plaintiff DIRECTV, LLC